**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MINCHIE GALOT CUPAT, Individually
and on Behalf of All Others Similarly
Situated,

Plaintiff,

v.                                                      JURY TRIAL DEMANDED

PALANTIR TECHNOLOGIES INC.,
ALEXANDER C. KARP, DAVID GLAZER,
and SHYAM SANKAR,

Defendants.

---

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL**
**SECURITIES LAWS**

---

Plaintiff Minchie Galot Cupat ("Plaintiff"), individually and on behalf of all others

similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against

Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's

own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation

conducted by and through Plaintiff's attorneys, which included, among other things, a review of

the Defendants' public documents, conference calls and announcements made by Defendants,

United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press

releases published by and regarding Palantir Technologies Inc. ("Palantir" or the "Company"),

analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Palantir securities between November 9, 2021 and May 6, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Palantir builds and deploys software platforms to assist the U.S. intelligence community in counterterrorism investigations and operations.  The Company has two operating segments, commercial and government, with the latter primarily serving agencies in the U.S. federal government and non-U.S. governments.  Palantir also invests in so-called "marketable securities" consisting of equity securities in publicly-traded companies.

3.      Palantir has consistently described sources of geopolitical instability and other disruptions—*e.g.*, armed conflicts, economic crises, and the COVID-19 pandemic—as tailwinds for its business, given that the Company's products and services are purportedly built to aid its customers in assessing and responding to such disruptions.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Palantir's investments

in marketable securities were having a significant negative impact on the Company's earnings per share ("EPS") results; (ii) Palantir overstated the sustainability of its government segment's growth and revenues; (iii) Palantir was experiencing a significant slowdown in revenue growth, particularly among its government customers, despite ongoing global conflicts and market disruptions; (iv) as a result of all the foregoing, the Company was likely to miss consensus estimates for its first quarter 2022 ("Q1") EPS and second quarter 2022 ("Q2") sales outlook; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On May 9, 2022, Palantir issued a press release announcing its Q1 financial results and guidance for Q2.  For Q1, Palantir announced adjusted EPS of $0.02, compared to analyst estimates of $0.04 per share, noting on a conference call that the "[f]irst quarter adjusted [EPS of] $0.02 . . . includes a negative $0.02 impact driven primarily by unrealized losses on marketable securities."  The Company also disclosed that government revenue grew by only 16% year-over-year for Q1, representing a significant slowdown in revenue growth compared to prior quarters, and that, for Q2, the Company expected $470 million in sales, compared to estimates of $483.76 million.

6.      On this news, Palantir's stock price fell $2.02 per share, or 21.31%, to close at $7.46 per share on May 9, 2022.

7.      As multiple news outlets reported that day, Palantir's significant decline in revenue growth, particularly from its government customers, surprised investors, especially given the ongoing geopolitical instability and other disruptions caused by, *inter alia*, the ongoing COVID-

19 pandemic and Russo-Ukrainian War—that is, precisely the type of destabilizing conditions that the Company had previously touted as tailwinds for its business.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Palantir is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired Palantir securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Palantir is a Delaware corporation with principal executive offices located at 1555 Blake Street, Suite 250, Denver, Colorado 80202.  Palantir's Class A common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the trading symbol "PLTR".

15.     Defendant Alexander C. Karp ("Karp") has served as Palantir's Chief Executive Officer at all relevant times.

16.     Defendant David Glazer ("Glazer") has served as Palantir's Chief Financial Officer at all relevant times.

17.     Defendant Shyam Sankar ("Sankar") has served as Palantir's Chief Operating Officer at all relevant times.

18.     Defendants Karp, Glazer, and Sankar are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Palantir's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Palantir's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Palantir, and their access to material information available to them but not to the public, the

Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     Palantir and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Palantir builds and deploys software platforms to assist the U.S. intelligence community in counterterrorism investigations and operations.  The Company has two operating segments, commercial and government, with the latter primarily serving agencies in the U.S. federal government and non-U.S. governments.  Palantir also invests in so-called "marketable securities" consisting of equity securities in publicly-traded companies.

22.     Palantir has consistently described sources of geopolitical instability and other disruptions—*e.g.*, armed conflicts, economic crises, and the COVID-19 pandemic—as tailwinds for its business, given that the Company's products and services are purportedly built to aid its customers in assessing and responding to such disruptions.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period begins on November 9, 2021, when Palantir hosted a conference call with investors and analysts during pre-market hours to discuss the Company's third quarter 2021 results (the "3Q21 Earnings Call").  On the call, while discussing Palantir's growing government customer base in his prepared remarks, Defendant Karp assured investors: "We have

a motivating set of customers and growing pipeline for big pursuits in '22 and beyond, and it is growing every quarter.  We're not just competing for programs.  Our unique capabilities are creating their own opportunities."

24.     Similarly, also during his prepared remarks on the 3Q21 Earnings Call, Defendant Karp represented, in relevant part:

> One thing -- perhaps the one thing we have demonstrated to the market is that it is possible to sell software at scale to the government for programs of record where the government might have historically otherwise bought labor and services. And of course in doing so, we have radically transformed the margin profile of these big government contracts. There is an immense opportunity in this sector to partner with existing government contractors to productize their solutions that they are delivering as services today and in doing so, to transform the EBITDA they generate against their existing revenue with our platforms.

25.     Moreover, in response to a question on the 3Q21 Earnings Call regarding "the future of Palantir's Public Sector business, including if there are any billion-dollar contracts like the latest U.S. Army wins in the pipeline[,]" Defendant Sankar indicated that, because of multiple government contract wins in the quarter, Palantir was "uniquely position[ed] . . . for future U.S. Army programs[,]" while going on to state, in relevant part:

> But that's just the army. We had incredible opportunity that Space force[] and at the Air Force, places that we are investing a lot, we're building on [Indiscernible] Project from [Indiscernible] air force and that forecourt space force reporting to the Space domains awareness platform. A very unique position. We have many independent opportunities to extend the work that we have done under, under USDI and NGA into the Combatant Commands themselves to directly take on near-peer threats . . . . Beyond defense, we see immense opportunities in our pipeline across health from the NHF and VA to the NIH and HHS. We see new opportunities within the Defense Industrial Base in its own right as customers to help them with their own manufacturing, but also in being a strategic partner, helping them capture new revenue streams by AI enabling their hardware platforms. This pipeline has aggregated fee in building. And all of this is happening despite the macro headwinds that we've all heard about across government services.

COVID's impact on delaying the pace of work. And we are just competing for known opportunities. Our capabilities are so unique, we're creating our own opportunities. The macro factors here are big, big tailwinds for us. Clear consensus on the threat from an aggressive CCP, not only in terms of impacts on demand in the U.S. but also in Japan, Korea, Australia, the UK, the west and her allies broadly. The infrastructure bill, and our fit on the programs and awards that are being driven there. Carbon emissions management, EV charging infrastructure, building on our incredible commercial momentum in the mobility value chain. Delivery of major projects on time and on budget, and more broadly, the opportunity for SIs and primes on infrastructure projects to partner with Palantir, to develop their own high-margin software streams in place of historically low-margin nonrecurring services on our platforms. We are just at the beginning of big secular trends here. Trends that we anticipated and have invested in for years. We are uniquely positioned, cutting-edge product, ready to meet its moment.

26.     Also on November 9, 2021, Palantir filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2021 (the "3Q21 10-Q").  The 3Q21 10-Q stated, *inter alia,* that "[w]e have built lasting and significant customer relationships with some of the world's leading government institutions" and "[w]e anticipate that our reach among an increasingly broad set of customers, in both the commercial and government sectors, will accelerate moving forward."

27.     With respect to marketable securities, the 3Q21 10-Q stated, in relevant part:

Marketable securities . . . are recorded at fair market value each reporting period. Realized and unrealized gains and losses are recorded in other income (expense), net on the condensed consolidated statements of operations. During the three and nine months ended September 30, 2021, the Company recorded net unrealized losses of $7.2 million within other income (expense), net on the condensed consolidated statements of operations.

28.     Appended as exhibits to the 3Q21 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2022 ("SOX"), wherein Defendants Karp and Glazer certified that the 3Q21 10-Q "fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]

and that information contained in [the 3Q21 10-Q] fairly presents, in all material respects, the financial condition and results of operations of Palantir[.]"

29.     On February 17, 2022, Palantir hosted a conference call with investors and analysts to discuss the Company's fourth quarter and full year 2021 results (the "4Q/FY21 Earnings Call"). On the call, a Jefferies analyst commented that government "decelerate[d] pretty materially in Q1 in terms of the growth" and asked Defendants for their "perspective on what's happening on the government side?"  In response, Defendant Karp downplayed issues with growth in Palantir's government segment, while simultaneously assuring investors that Defendants had "solved" or were "solving" issues impacting that growth:

> Well, there's a couple of things that are happening there. So if you were looking at this more like from a scientific perspective, you had a time series that's 15 years, first thing you would do is say, okay, what's happening in that time series over the 15 years. What you see in U.S. gov is a compounded growth of 30%, but like this, which is the positive of U.S. gov is it's reliable. The sums are big. The quality of the revenue is very high.

> The -- one of their -- essentially, there are a number of problems, but the biggest problem is barrier to entry, which we've clearly solved and then rebarriers to entry, which we've solved or solving, but that's going very well. And then the second one is lumpiness. Now you -- that lumpiness still exists. And actually, in some ways, it's worse because to get the integral to grow, you need these massive deals. We also have small deals, but the fact that we are on the biggest, most important parts of the U.S. government on our software is.

> So there's really a twofold answer to your question. One, what will happen this year? Are there -- is there deceleration in actual one over a long time series? The answer is clearly no. But then the question is, if the baseline is 30, how does it get to where we want it, which was like the beginning of last year. And now at the end of last year, and the way that happens is the deals we're already positioned to win actually closed.

30. Defendant Karp, in response to the same question on the 4Q/FY21 Earnings Call, also represented that increasing global threats would boost Palantir's government segment revenues, stating, in relevant part:

> [I]f you just look at that chart, I showed you with the [compound annual growth rate (CAGR)] on Foundry, these are the most important programs for a dangerous world.
>
> Now I can't go into all the details, but we used to debate with people, especially my academic friends if the world was dangerous. The danger of the world being clear and present to the U.S. government is very protective. It doesn't guarantee that when this integral actually -- how it behaves, but it makes it much more likely that it will happen here and positively affect our revenue which is another reason why I suspect that we will do well.

31. On February 24, 2022, Palantir filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K"). The 2021 10-K contained the same statements as referenced in ¶ 26, *supra*, regarding Palantir's government customer relationships and anticipated "accelerat[ing]" reach among an increasingly broad set of government customers, while representing, *inter alia*, that "customers are increasingly adopting our software . . . over internal software development efforts" as a result of "[r]ecent crises and systemic shocks, such as the COVID-19 pandemic[.]"

32. The 2021 10-K also purported to warn investors of market risks related to Palantir's marketable securities investments, stating, in relevant part:

> As of December 31, 2021, we had outstanding investments valued at $234.2 million in marketable securities. We may continue to make additional investments or sell the existing investments. These investments are often in early- or growth-stage companies that have minimal public trading history; as such the fair value of these investments may fluctuate depending on the financial outcome and prospects of the investees, as well as global market conditions including recent and ongoing volatility related to the impacts of COVID-19. Additionally, early-stage companies are inherently risky because the technologies or products these companies have under development are typically in the early phases and may never materialize, and

> they may experience a decline in financial condition, which could result in a loss of a substantial part of our investment in these companies. We record gains or losses as the fair value of these investments change and as we sell them. We anticipate additional volatility to our consolidated statements of operations due to changes in market prices, and as such gains and losses are realized. During the fiscal year ended December 31, 2021, net unrealized losses of $72.8 million related to marketable securities were recorded in other income (expense), net on the consolidated statements of operations.

Plainly, the foregoing risk warning was a generic, boilerplate provision that was not tailored to Palantir's actual known risks regarding the material negative impact that the Company's marketable securities investments were having on the Company's EPS results.

33.     Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Karp and Glazer.

34.     The statements referenced in ¶¶ 23-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Palantir's investments in marketable securities were having a significant negative impact on the Company's EPS results; (ii) Palantir overstated the sustainability of its government segment's growth and revenues; (iii) Palantir was experiencing a significant slowdown in revenue growth, particularly among its government customers, despite ongoing global conflicts and market disruptions; (iv) as a result of all the foregoing, the Company was likely to miss consensus estimates for its Q1 EPS and Q2 sales outlook; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

35.   On May 9, 2022, during pre-market hours, Palantir issued a press release announcing its Q1 financial results, including adjusted EPS of $0.02, compared to analyst estimates of $0.04 per share.  Palantir also disclosed that government revenue grew by only 16% year-over-year for Q1, representing a significant slowdown in revenue growth compared to prior quarters, and that, for Q2, the Company expected $470 million in sales, compared to estimates of $483.76 million.

36.   Also on May 9, 2022, during pre-market hours, Palantir hosted a conference call with investors and analysts to discuss the Company's Q1 results and Q2 guidance.  On the call, Defendant Glazer disclosed that the Company's "[f]irst quarter adjusted [EPS of] $0.02 . . . includes a negative $0.02 impact driven primarily by unrealized losses on marketable securities."

37.   Following these disclosures, Palantir's stock price fell $2.02 per share, or 21.31%, to close at $7.46 per share on May 9, 2022.

38.   As multiple news outlets reported that day, Palantir's significant decline in revenue growth, particularly from its government customers, surprised investors, especially given the ongoing geopolitical instability and other disruptions caused by, *inter alia*, the ongoing COVID-19 pandemic and Russo-Ukrainian War—that is, precisely the type of destabilizing conditions that the Company had previously touted as tailwinds for its business.

39.   For example, on May 9, 2022, *Bloomberg* published an article entitled "Palantir Craters Most Since 2020 on Wider-Than-Expected Loss[,]" stating that Palantir's "shares plummeted as much as 22% . . . the biggest intraday drop since September 2020, after the software maker reported mounting losses and a disappointing sales forecast." *Blomberg* noted, among other

issues, that "in the quarter that ended in March, revenue growth from government customers slowed to 16% with sales totaling $241.7 million[,]" representing "the slowest quarterly growth for the segment since Palantir began reporting results as a public company in late 2020[,]" even "despite new and expanded deals with agencies spurred by continuing fallout from the pandemic and rising geopolitical tensions, particularly the Russia-Ukraine conflict."

40.    Also on May 9, 2022, *Investor's Business Daily* published an article entitled "Palantir Earnings, Revenue Guidance Miss Amid Slowing Government Growth[,]" which similarly noted that Palantir's "stock plunged as revenue guidance came in below expectations amid slowing government growth."

41.    Likewise, on May 9, 2022, *The Motley Fool* published an article entitled "Why Palantir Stock Crashed Today[,]" stating that Palantir's "slowing growth drove many investors to sell their shares" as "its larger government business saw revenue rise by only 16%, to $241 million[,]" which "was a surprise to investors, as the company was widely believed to see significantly higher demand for its government- and defense-focused data services due to the war in Ukraine."

42.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Palantir securities during the Class Period (the "Class"); and were damaged upon the

revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Palantir securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Palantir or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Palantir;

- whether the Individual Defendants caused Palantir to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Palantir securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

49.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Palantir securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Palantir securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout

the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Palantir securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Palantir securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

55.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Palantir securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Palantir's finances and business prospects.

56.     By virtue of their positions at Palantir, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Palantir, the Individual Defendants had knowledge of the details of Palantir's internal affairs.

58.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Palantir.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Palantir's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Palantir securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Palantir's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Palantir securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

59.     During the Class Period, Palantir securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Palantir securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the

other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Palantir securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Palantir securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

62.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of Palantir, and conducted and participated, directly and indirectly, in the conduct of Palantir's business affairs.  Because of their senior positions, they knew the adverse non-public information about Palantir's misstatement of income and expenses and false financial statements.

64.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Palantir's financial condition and results of operations, and to correct promptly any public statements issued by Palantir which had become materially false or misleading.

65.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Palantir disseminated in the marketplace during the Class Period concerning Palantir's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Palantir to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Palantir within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Palantir securities.

66.     Each of the Individual Defendants, therefore, acted as a controlling person of Palantir.  By reason of their senior management positions and/or being directors of Palantir, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Palantir to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Palantir and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Palantir.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 15, 2022                          Respectfully submitted,

                                                   POMERANTZ LLP

                                                   */s/ Jeremy A. Lieberman*
                                                   Jeremy A. Lieberman
                                                   J. Alexander Hood II
                                                   600 Third Avenue, 20th Floor
                                                   New York, New York 10016
                                                   Telephone: (212) 661-1100
                                                   Facsimile: (212) 661-8665
                                                   jalieberman@pomlaw.com
                                                   ahood@pomlaw.com

                                                   *Attorneys for Plaintiff*

DocuSign Envelope ID: EC3254E8-DCA9-45E4-9A6D-68705CCADD1C

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.      I,  <u>Minchie Galot Cupat                              </u>, make this declaration

pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private

Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Palantir Technologies Inc. ("Palantir" or the

"Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Palantir securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Palantir securities during the class period, including providing

testimony at deposition and trial, if necessary.  I understand that the Court has the authority to

select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Palantir securities during the Class

Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is

signed, I have not served or sought to serve as a representative party on behalf of a class under the

federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of

the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or

approved by the Court.

DocuSign Envelope ID: EC3254E8-DCA9-45E4-9A6D-68705CCADD1C

8.     I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed ___9/8/2022_____
                    **(Date)**

DocuSigned by:

_____
**(Signature)** 8E08C20A8B0B406...

___Minchie Galot Cupat_____
          **(Type or Print Name)**

**Palantir Technologies Inc. (PLTR)**                                                    **Minchie Galot Cupat**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 4/21/2022 | 19 | $13.0200 |
| Purchase | 4/25/2022 | 83 | $12.0400 |
| Purchase | 5/6/2022 | 245 | $9.4800 |