# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02384-CNS-SKC

MINCHIE GALOT CUPAT,
Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

     v.

PALANTIR TECHNOLOGIES INC.,
ALEXANDER C. KARP,
DAVID GLAZER, and
SHYAM SANKAR,

Defendants.

*[Caption continues on next page.]*

---

## MOTION OF AFA SJUK TJÄNSTEPENSIONSAKTIEBOLAG, AFA LIV TJÄNSTEPENSIONSAKTIEBOLAG, AND AFA TRYGG TJÄNSTEPENSIONSAKTIEBOLAG FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL

---

Civil Action No. 1:22-cv-02805-SKC

ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM,
Individually and on Behalf of All Others Similarly Situated,

 Plaintiff,

v.

PALANTIR TECHNOLOGIES INC.,
ALEXANDER C. KARP,
DAVID GLAZER, and
SHYAM SANKAR,

 Defendants.

---

Civil Action No. 1:22-cv-02893-PAB-KLM

SHIJUN LIU, INDIVIDUALLY AND AS TRUSTEE OF THE LIU FAMILY TRUST 2019,
Individually and on Behalf of All Others Similarly Situated,

 Plaintiff,

v.

PALANTIR TECHNOLOGIES INC.,
ALEXANDER KARP,
STEPHEN COHEN,
PETER THIEL,
WILLIAM HO,
KEVIN KAWASAKI,
DAVID GLAZER,
SHYAM SANKAR,
ALEXANDER MOORE,
SPENCER RASCOFF, and
ALEXANDRA SCHIFF,

 Defendants.

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................ 2

II.  FACTUAL BACKGROUND ............................................................................... 5

III. ARGUMENT ....................................................................................................... 8

    A.   The Related Actions Should Be Consolidated ......................................... 8

    B.   Afa Is the Most Adequate Plaintiff .......................................................... 9

        1.   Afa Has Timely Moved for Appointment as Lead Plaintiff .................... 10

        2.   Afa Has the Largest Financial Interest ..................................................... 11

        3.   Afa Satisfies the Requirements of Rule 23 ............................................... 11

            a.   Afa's Claims Are Typical ............................................................. 12

            b.   Afa Is Adequate ........................................................................... 12

    C.   The Court Should Approve Afa's Selection of Lead Counsel ............................ 14

IV.  CONCLUSION .................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barnwell v. Advanced Emissions Sols., Inc.*,
    No. 14-cv-01243-CMA-KMT,
    2015 WL 13612170 (D. Colo. Feb. 19, 2015) ............................................................3, 12, 13

*Bhojwani v. Pistiolis*,
    Nos. 06 Civ. 13761(CM)(KNF), *et al.*,
    2007 WL 2197836 (S.D.N.Y. June 26, 2007), ...........................................................2, 3

*Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*,
    306 F.3d 726 (9th Cir. 2002) ............................................................................................4

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..............................................................................................1

*Cohen v. U.S. Dist. Court for N. Dist. of Cal.*,
    586 F.3d 703 (9th Cir. 2009) ..........................................................................................14

*Cooke v. Equal Energy Ltd.*,
    Nos. CIV-14-0087-C, *et al.*,
    2014 WL 3819159 (W.D. Okla. May 8, 2014) ...............................................................12

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..............................................................................13, 14

*Skaggs v. Level 3 Commc'ns, Inc.*,
    Nos. 09-cv-00200-PAB-CBS, *et al.*,
    2009 WL 458682 (D. Colo. Feb. 24, 2009) .....................................................................9

**Statutes**

15 U.S.C. § 77z-1(a) ............................................................................................. *passim*

15 U.S.C. § 78u-4(a) ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4) ............................................................................................11, 12

H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730 .......................4, 13

S. Rep. No. 104-98 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679 ...........................................13

Afa Sjuk tjänstepensionsaktiebolag, Afa Liv tjänstepensionsaktiebolag, and Afa Trygg tjänstepensionsaktiebolag (collectively, "Afa") respectfully move this Court for entry of an Order, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 77z-1(a)(3)(B) and 78u-4(a)(3)(B): (1) consolidating the above-captioned actions (the "Related Actions"); (2) appointing Afa as Lead Plaintiff; (3) approving Afa's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class; and (4) granting such other relief as the Court may deem just and proper. [1, 2]

---

[1]    Unless otherwise noted, all emphases are added and all internal citations and quotation marks are omitted.

[2]    This Motion has been filed under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA, which provide that within sixty days after publication of the required notice, any member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the underlying action.  Consequently, counsel for Afa has no way of knowing who the competing lead plaintiff candidates—the opposing parties in this context—are at this time. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nly class members may seek to rebut the presumption, and the court should not permit or consider any arguments by defendants or non-class members.").  As a result, counsel for Afa is unable to confer with opposing counsel as prescribed in Local Rule of Practice of the United States District Court for the District of Colorado - Civil 7.1(a) ("Local Civil Rule 7.1(a)") and Rule III.C of Your Honor's Civil Practice

This Motion is made on the grounds that Afa timely filed this Motion and is the "most adequate plaintiff" pursuant to the PSLRA. Based on the information presently available, Afa has the largest financial interest in the relief sought by the class, and meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), as its claims are typical of the claims of the class and Afa will fairly and adequately represent the interests of the class. In addition, Afa has selected and retained Kessler Topaz, a law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v).

## I. INTRODUCTION

The Related Actions are three related securities class actions brought under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. § 77k, 77l(a)(2), and 77o, and/or Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), against Palantir Technologies Inc. ("Palantir" or the "Company") and certain of its current and former executive officers and directors (collectively, "Defendants"). The Related Actions are brought on behalf of all persons who purchased Palantir securities between September 30, 2020, and August 5, 2022, inclusive, including purchases made pursuant and/or traceable to the Company's September 30, 2020 direct listing (the "Class Period").[3] As detailed below, the Related Actions involve common issues of

---

Standards ("Rule III.C"), and respectfully requests that the conference requirements of Local Civil Rule 7.1(a) and Rule III.C be waived for this Motion.

[3] For purposes of this Motion, Afa has used the longest-pled class period in the Related Actions to calculate its financial interest and refers to the broadest set of claims. *See, e.g.*,

law and fact and should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)").  *See infra* Section III.A.

After consolidation, the PSLRA allows any member of the purported class to move for appointment as lead plaintiff and sets forth the process for determining which movant is the "most adequate plaintiff."  Specifically, the PSLRA requires a court to appoint as lead plaintiff the movant: (1) making a timely motion under the PSLRA's sixty-day deadline; (2) asserting the largest financial interest among the movants seeking appointment as lead plaintiff; and (3) that satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii) & 78u-4(a)(3)(B)(iii); *Barnwell v. Advanced Emissions Sols., Inc.*, No. 14-cv-01243-CMA-KMT, 2015 WL 13612170, at *2 (D. Colo. Feb. 19, 2015).  Afa meets all of the relevant criteria for appointment as Lead Plaintiff under the analysis required by the PSLRA.

Afa respectfully submits that it is the presumptively "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  Afa's motion is timely and its losses of approximately $908,708 under a last-in, first-out ("LIFO") analysis in connection with its transactions in Palantir securities during the Class Period represent the largest known financial interest in the relief sought by the class.  *See* Declaration of Naumon A. Amjed in Support of the Motion of Afa Sjuk tjänstepensionsaktiebolag, Afa Liv tjänstepensionsaktiebolag, and Afa Trygg

---

*Bhojwani v. Pistiolis*, Nos. 06 Civ. 13761(CM)(KNF), *et al*., 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007), *R. & R. partially adopted*, 2007 WL 9228588 (S.D.N.Y. July 30, 2007) (applying more inclusive class period).

tjänstepensionsaktiebolag for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Amjed Decl."), Exs. A & B. In addition to asserting the largest financial interest, Afa easily satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the class and because it will fairly and adequately represent the class. *See infra* Section III.B.

Moreover, as a sophisticated institutional investor responsible for overseeing approximately $20 billion in assets as of December 31, 2021, Afa is exactly the type of plaintiff that Congress envisioned would serve as lead plaintiff under the PSLRA. Therefore, Afa's appointment would fulfill a critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Lastly, Afa has retained experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, Afa's selection of Kessler Topaz as Lead Counsel for the class should be approved. 15 U.S.C. §§ 77z-1(a)(3)(B)(v) & 78u-4(a)(3)(B)(v); *Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*, 306 F.3d 726, 734 (9th Cir. 2002) ("[T]he [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff."). Kessler Topaz has an extensive history of prosecuting complex actions under the PSLRA. Thus, the class can be assured of zealous representation if Afa's selection of Kessler Topaz as Lead Counsel for the class is approved.

## II.      FACTUAL BACKGROUND

Palantir, a Delaware corporation headquartered in Denver, Colorado, is a data software company that focuses on building software to assist organizations with the integration of their data, decisions, and operations at scale.  Palantir initially built software for the intelligence community in the United States to assist in counterterrorism investigations and operation, and has expanded its operation to work with commercial enterprises.  The Related Actions allege that, during the Class Period, and in the prospectus and registration statements issued in connection with the Company's September 30, 2020 direct listing, Defendants made materially false and misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) Palantir's government revenue and deal value had been temporarily inflated by short-term contracts stemming from government responses to the COVID-19 pandemic, and the short-term boost to the Company's government revenue stream was not expected to continue after the relevant contracts ended; (2) Palantir had failed to secure additional government contracts sufficient to offset the expected revenue loss from contracts arising from government responses to the COVID-19 pandemic; (3) the recent growth rate of Palantir's government revenue and deal value was unsustainable and internally expected to decelerate and potentially decline by the end of 2021; (4) in an attempt to offset expected declines in its government business, Palantir had artificially inflated its deal value, commercial client base, and short-term commercial client revenue by investing in largely non-viable businesses, consisting primarily of special purpose acquisition company ("SPAC") targets, on the condition that these businesses enter into contracts for Company products and services purportedly worth hundreds of millions of dollars; (5) Palantir

was therefore unlikely to ever receive a substantial portion of this contractual revenue; (6) Palantir's investments pursuant to its SPAC investment strategy were at a substantial, undisclosed risk of being written down; (7) consequently, Palantir's estimated annual revenue growth—in excess of 30% for each year through 2025—lacked a reasonable basis in fact and was not obtainable; (8) Palantir's investments in marketable securities were having a significant negative impact on the Company's adjusted earnings per diluted share ("EPS") results; (9) Palantir was thus likely to miss analysts' consensus estimates for its first quarter 2022 EPS and second quarter 2022 sales outlook; and (10) as a result of the foregoing, Palantir's historical revenue, deal value, and client metrics, as well as Defendants' statements about the Company's business, operations, financial condition, and prospects, were materially false and misleading at all relevant times.

Investors began to learn the truth on November 9, 2021, when Palantir announced third quarter 2021 and estimated fourth quarter 2021 revenue growth of 36% and 30%, respectively, on a year-over-year basis. Both figures represented a significant deceleration from the 49% growth achieved in second quarter 2021. The Company also disclosed that government revenue had decreased on a sequential basis to $217.8 million, from $232.1 million in second quarter 2021. On this news, the price of Palantir Class A common stock declined $4.23 per share over two trading days, or approximately 16%, from a close of $26.75 per share on November 8, 2021, to close at $22.52 per share on November 10, 2021.

Then, on February 17, 2022, Palantir announced disappointing financial results for fourth quarter 2021 and full year 2021, including just 26% annual government revenue growth compared to 76% in the prior year period. On this news, the price of Palantir Class A common stock declined

$2.20 per share, or almost 16%, from a close of $13.97 per share on February 16, 2022, to close at $11.77 per share on February 17, 2022.

Investors continued to learn the truth on May 9, 2022, when Palantir announced lackluster first quarter 2022 financial results. Specifically, Palantir reported EPS of just $0.02 (compared to analysts' consensus estimate of $0.04 per share) and just 16% year-over-year revenue growth in its government segment, a substantial decline from the 26% and 47% growth reported in the prior quarter and year, respectively. In addition, the Company provided weak second quarter 2022 sales guidance of $470 million, falling short of analysts' consensus estimate of $483.76 million. Defendants further revealed that the $0.02 EPS "includes a negative $0.02 impact driven primarily by unrealized losses on marketable securities" and advised that they had "wound the [SPAC investment strategy] down." Market commentators quickly observed that decelerated growth in Palantir's government segment came as "a surprise to investors, as the company was widely believed to see significantly higher demand for its government- and defense-focused data services due to the war in Ukraine." On this news, the price of Palantir Class A common stock declined $2.02 per share, or approximately 21%, from a close of $9.48 per share on May 6, 2022, to close at $7.46 per share on May 9, 2022.

Finally, on August 8, 2022, Palantir revised its annual revenue guidance downwards to a range of between $1.9 billion and $1.902 billion—representing less than 24% year-over-year growth, falling far short of the 30% annual growth that the Company had affirmed, just three months earlier, as a minimum for each year through 2025. During an earnings conference call that day, Defendants revealed that Palantir's total remaining deal value was "roughly flat quarter-over-quarter." On this news, the price of Palantir Class A common stock declined $2.20 per share over

two trading days, or approximately 19%, from a close of $11.45 per share on August 5, 2022, to close at $9.25 per share on August 9, 2022.

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §§ 77z-1(a)(3)(B)(ii) & 78u-4(a)(3)(B)(ii).

Here, there are at least three related securities class actions asserting claims under the federal securities laws on behalf of investors:

| Case Caption | Date Filed | Claims/Class Period |
|---|---|---|
| *Cupat v. Palantir Technologies Inc., et al.*, Civil Action No. 1:22-cv-02384-CNS-SKC (D. Colo.) | September 15, 2022 | Sections 10(b) and 20(a) of the Exchange Act; November 9, 2021, through May 6, 2022 |
| *Allegheny County Employees' Retirement System v. Palantir Technologies Inc., et al.,* Civil Action No. 1:22-cv-02805-SKC (D. Colo.) | October 25, 2022 | Sections 10(b) and 20(a) of the Exchange Act; February 16, 2021, through May 6, 2022 |

| *Liu v. Palantir Technologies Inc., et al.*, Civil Action No. 1:22-cv-02893-PAB-KLM (D. Colo.) | November 4, 2022 | Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act; September 30, 2020, through August 5, 2022, including purchases traceable to the September 30, 2020 direct listing |
|---|---|---|

Consolidation is appropriate under Rule 42(a) where the actions involve "a common question of law or fact." *Skaggs v. Level 3 Commc'ns, Inc.*, Nos. 09-cv-00200-PAB-CBS, *et al.*, 2009 WL 458682, at *1 (D. Colo. Feb. 24, 2009) (Brimmer, J.). Here, the Related Actions assert claims under the Securities Act and the Exchange Act against common defendants, across overlapping class periods, and concerning substantially the same conduct. Accordingly, consolidation is appropriate. *See id.*

### B. Afa Is the Most Adequate Plaintiff

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. §§ 77z-1(a)(1)-(3)(B)(i) & 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id.* §§ 77z-1(a)(3)(A)(i) & 78u-4(a)(3)(A)(i). Within sixty days after publication of the notice, any member of the proposed

class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id*. §§ 77z-1(a)(3)(A)-(B) & 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members. *See id*. §§ 77z-1(a)(3)(B)(i) & 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the person that:

> (aa) has either filed the complaint or made a motion in response to a
> notice . . . ;
>
> (bb) in the determination of the court, has the largest financial
> interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

*Id*. §§ 77z-1(a)(3)(B)(iii)(I) & 78u-4(a)(3)(B)(iii)(I).

Afa is the "most adequate plaintiff" because it: (1) timely moved for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23" for purposes of this Motion. *Id*.

### 1.     Afa Has Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows members of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. §§ 77z-1(a)(3)(A)(i)(II) & 78u- 4(a)(3)(A)(i)(II). Here, in connection with the filing of the first of the

Related Actions, *Cupat v. Palantir Technologies Inc., et al.*, Civil Action No. 1:22-cv-02384-CNS-SKC (D. Colo.), notice was published in *Globe Newswire* on September 15, 2022, alerting investors to the pendency of the action and informing them of the November 14, 2022 deadline to seek appointment as Lead Plaintiff. *See* Amjed Decl., Ex. C. Accordingly, Afa has timely moved this Court for appointment as Lead Plaintiff.

### 2. Afa Has the Largest Financial Interest

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I) & 78u-4(a)(3)(B)(iii)(I). AFA suffered losses of approximately $908,708 under a LIFO analysis in connection with its Class Period transactions in Palantir securities. *See* Amjed Decl., Exs. A & B. To the best of its knowledge, Afa has the largest financial interest in this matter and is the presumptive "most adequate plaintiff."

### 3. Afa Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(cc) & 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of

the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the

interests of the class.

Fed. R. Civ. P. 23(a). At the lead plaintiff selection stage of litigation, only a "preliminary showing" of typicality and adequacy is required. *Cooke v. Equal Energy Ltd.*, Nos. CIV-14-0087-C, *et al*., 2014 WL 3819159, at *2 (W.D. Okla. May 8, 2014).

### a. Afa's Claims Are Typical

The typicality requirement is satisfied when the presumptive lead plaintiff's claims "arise out of the same course of conduct and are based on the same theories as those of the absent class members and thus their interests are coextensive with and typical of those of all class members." *Advanced Emissions*, 2015 WL 13612170, at *2. Afa satisfies the typicality requirement because, just like all other proposed class members, Afa seeks recovery for losses incurred as a result of Defendants' misrepresentations and omissions. Thus, Afa's claims arise from the same conduct as those of the other class members and Afa satisfies Rule 23's typicality requirement. *See id.* at *3 (finding that a lead plaintiff movant had satisfied the typicality requirement "because it purchased or otherwise acquired [the Company's] common stock during the Class Period at prices alleged to have been artificially inflated because of Defendants' false and misleading statements").

### b. Afa Is Adequate

The adequacy element of Rule 23 is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Specifically, the adequacy requirement is met where the presumptive lead plaintiff can demonstrate "(1) the absence of

potential conflict between the named plaintiffs and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation." *Advanced Emissions*, 2015 WL 13612170, at *2.

Afa satisfies the adequacy requirement because its interest in vigorously pursuing claims against Defendants—given its substantial financial loss—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements. There is no potential conflict between Afa's interests and those of the other members of the class, and, as set forth in Afa's PSLRA certification, Afa is fully committed to vigorously pursuing the claims on behalf of the class. *See* Amjed Decl., Ex. A. Afa has also established its adequacy through its selection of Kessler Topaz as Lead Counsel for the class. As discussed more fully below, Kessler Topaz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its capability to conduct complex securities class action litigation in an efficient, effective, and professional manner.

In addition to satisfying the typicality and adequacy requirements of Rule 23, Afa—as a sophisticated institutional investor with approximately $20 billion in assets under management as of December 31, 2021—is also the prototypical investor Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34, *as reprinted in* 1995 U.S.C.C.A.N. at 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); *Glauser v. EVCI Career Colls. Holding*

*Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.").

### C. The Court Should Approve Afa's Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(v) & 78u-4(a)(3)(B)(v); *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). Accordingly, Afa's selection of Kessler Topaz as Lead Counsel for the class should be approved.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Amjed Decl., Ex. D. The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions across the country, including: *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, No. 18-cv-12084 (VSB) (S.D.N.Y.); *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (JLA) (N.D. Ill.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA.  Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—which at the time was one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).  The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr.  *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Thus the Court can be assured that the class will receive the highest caliber of legal representation should it approve Afa's selection of Kessler Topaz as Lead Counsel for the class. Accordingly, Afa's selection of Lead Counsel should be approved.

## IV. CONCLUSION

For the reasons stated herein, Afa respectfully requests that the Court: (1) appoint Afa as Lead Plaintiff; (2) approve its selection of Kessler Topaz as Lead Counsel for the class; and (3) grant such other relief as the Court may deem just and proper.

Dated:  November 14, 2022

Respectfully submitted,

*s/ Naumon A. Amjed*
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Barbara Schwartz
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

Facsimile: (610) 667-7056
Email: namjed@ktmc.com
Email: dcheck@ktmc.com
Email: rdegnan@ktmc.com
Email: bschwartz@ktmc.com

*Counsel for Afa Sjuk
tjänstepensionsaktiebolag, Afa Liv
tjänstepensionsaktiebolag, and Afa Trygg
tjänstepensionsaktiebolag, and Proposed
Lead Counsel for the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 14, 2022 I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Naumon A. Amjed*
Naumon A. Amjed
**KESSLER TOPAZ
 MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: namjed@ktmc.com

*Counsel for Afa Sjuk
tjänstepensionsaktiebolag, Afa Liv
tjänstepensionsaktiebolag, and Afa Trygg
tjänstepensionsaktiebolag, and Proposed
Lead Counsel for the Class*
