**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge Gordon P. Gallagher

Lead Civil Action No. 1:22-cv-02384-GPG-SBP
*Consolidated with Civil Actions 1:22-cv-02805-GPG-SBP and 1:22-cv-02893-GPG-SBP*

MINCHIE GALOT CUPAT, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

PALANTIR TECHNOLOGIES INC.,
ALEXANDER C. KARP,
DAVID GLAZER, and
SHYAM SANKAR,

      Defendants.

---

**PLAINTIFFS' MOTION FOR A PARTIAL LIFT OF THE PSLRA DISCOVERY STAY**

---

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................................ 6

III.    ARGUMENT ......................................................................................................... 7

        A.      Discovery Is Particularized........................................................................ 8

        B.      Plaintiffs Would Face Undue Prejudice if Discovery Were Not
                Allowed ................................................................................................... 12

        C.      A Limited Lift of the Discovery Stay Would Further the Purposes of
                the PSLRA ............................................................................................... 13

IV.     CONCLUSION.................................................................................................... 15

4860-5833-1071.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003),
*as amended on denial of reh'g* (Aug. 29, 2003) ........................................................ 6

*Anderson v. First Sec. Corp.*,
157 F. Supp. 2d 1230 (D. Utah 2001) ............................................................ 3, 10, 14

*Escott v. BarChris Const. Corp.*,
283 F. Supp. 643 (S.D.N.Y. 1968) ............................................................. 15

*Health Grades, Inc. v. Decatur Mem'l Hosp.*,
190 F. App'x 586 (10th Cir. 2006) ............................................................. 12

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ............................................................. 8

*In re Grand Casinos, Inc. Sec. Litig.*,
988 F. Supp. 1270 (D. Minn. 1997) ............................................................. 15

*In re Molycorp, Inc. Sec. Litig.*,
157 F. Supp. 3d 987 (D. Colo. 2016) ......................................................... 14

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
220 F.R.D. 246 (D. Md. 2004) ..................................................................... 8

*In re Tyco Int'l, Ltd., Sec. Litig.*,
2000 WL 33654141 (D.N.H. July 27, 2000) ........................................................ 4, 8

*In re Williams Sec. Litig.*,
2003 WL 22013464 (N.D. Okla. May 22, 2003) ...................................................... 12

*In re WorldCom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002) ................................................................ 5, 13

*John v. Whole Foods Mkt. Grp., Inc.*,
858 F.3d 732 (2d Cir. 2017) .................................................................... 2, 3

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005) .................................................................... 3, 14

*Lewis v. Denver Fire Dep't*,
2009 WL 5126545 (D. Colo. Dec. 18, 2009) ......................................................... 10

**Page**

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) ............................................................................... 6, 15

*Schwartz v. Celestial Seasonings, Inc.*,
    124 F.3d 1246 (10th Cir. 1997) ................................................................. 14

*SEC v. Melchior*,
    1993 WL 89141 (D. Utah Jan. 14, 1993) .................................................... 2

*SEC v. Murphy*,
    626 F.2d 633 (9th Cir. 1980) ..................................................................... 2

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023)......................................................................... 1, 6, 7

*Thomas v. Metro. Life Ins. Co.*,
    540 F. Supp. 2d 1212 (W.D. Okla. 2008)..........................................*passim*

*Vacold LLC v. Cerami*,
    2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ......................................... 12, 13

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(b)(3)(B) .................................................................................... 1, 7

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730 ......................................................... 15

S. Rep. No. 104-98 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 679 ......................................................... 13

4860-5833-1071.v1

Lead Plaintiff California Public Employees' Retirement System ("CalPERS") and additional named plaintiff Shijun Liu, Individually and as Trustee of The Liu Family Trust 2019 (together, "Plaintiffs"), respectfully move the Court, pursuant to 15 U.S.C. §78u-4(b)(3)(B), for a partial lift of the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I.    INTRODUCTION

Plaintiffs' contemporaneously-filed Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("SAC") alleges that the defendants violated §§11 and 15 of the Securities Act of 1933 ("Securities Act") and §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934.  As relevant to this motion, Plaintiffs allege that the Securities Act Defendants violated §11 by issuing a Registration Statement in connection with taking Palantir public via a September 2020 direct listing that contained untrue statements of material fact and omitted facts necessary to make the statements therein not misleading.  ¶247.[2]

A plaintiff asserting a §11 claim must "plead and prove that [it] purchased shares traceable to the allegedly defective registration statement."  *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023).  Plaintiffs respectfully submit that the SAC does so.  The SAC pleads that CalPERS purchased 1,280,700 shares during the 90-day period that the

---

[1]    Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiffs' counsel has conferred with counsel for Defendants.  Defendants' counsel informed Plaintiffs' counsel on May 23, 2024 that Defendants do not agree to the relief sought herein.

[2]    All capitalized terms that are not defined herein have the same meaning as in the SAC.  Citations to "¶__" and "¶¶__" are to the SAC unless otherwise noted.  All emphasis is added and citations are omitted unless otherwise stated.

- 1 -

Registration Statement was effective.  ¶239.[3]  Palantir's direct listing was a single liquidity event whereby a single class of its stock (Class A common stock) was offered collectively to the market during the same 90-day period (September 30, 2020 through December 28, 2020) for the same type of consideration (cash) and the same general purpose ("access to liquidity").  ¶¶233-236.  These allegations plausibly plead that Palantir's Offering was a single, integrated offering which, under the integration doctrine, cannot be diced into multiple parts to evade the proscriptions of the Securities Act.  *See SEC v. Melchior*, 1993 WL 89141, at *9 (D. Utah Jan. 14, 1993); *see also SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980) ("[E]xemptions from registration provisions are construed narrowly in order to further the purpose of the Act.").  Thus, all shares sold during the Registration Statement's effective period are deemed registered and subject to §11.

Even without integration, CalPERS has plausibly alleged that it purchased shares traceable to the Registration Statement, as the probability that CalPERS did so is no less than 99.99 (followed by 1,000+ to 400,000+ additional nines) percent.  ¶242.  That is so high as to constitute a legal certainty.  ¶237.  These allegations are sufficient to plausibly plead CalPERS' standing to pursue the §11 claim.  *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (standing alleged where foods were mislabeled 89% of the time, plaintiff purchased those foods on a monthly basis, and "drawing all reasonable inferences in his favor, it is plausible that John overpaid for at least one product").

The cases that hold contrarily and reject statistical tracing rest on antiquated assumptions about the securities markets.  These opinions were premised on the

---

[3]  "Palantir shares" or "shares" refers to Palantir Class A common stock.

conclusion that tracing is impossible, even with the benefit of discovery.  *See Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 492, 497 (5th Cir. 2005) (at class certification, following discovery, the plaintiffs' expert conceded that there was no way to trace individual shares once the pool became contaminated with outside shares).  As the SAC alleges, however, in today's modern securities markets, tracing *is* possible, which is sufficient at the pleadings stage.  ¶243; *Whole Foods*, 858 F.3d at 737.  The SAC also outlines the process by which Plaintiffs would use documents obtained in discovery to ultimately prove tracing.  *Id.* Plaintiffs have, thus, pleaded both statistical tracing and their ability to ultimately prove standing through discovery.

If the Court finds that more is required at this stage, Plaintiffs respectfully request a partial lift of the PSLRA discovery stay to allow Plaintiffs an opportunity to pursue targeted discovery to prove through documentary evidence what they have plausibly pleaded – that Plaintiffs can trace their purchases of Palantir shares to the Registration Statement. Plaintiffs retained Professor Joshua Mitts, Ph.D., to advise on this process.  Dr. Mitts has extensive experience advising on the analysis of trading data in connection with securities violations, including advising the Department of Justice ("DOJ") and U.S. Securities and Exchange Commission ("SEC") and reviewing tens of thousands of pages of the very documents Plaintiffs allege can be used to prove tracing here.  Movants' App'x, p. 3, ¶¶5-6 – Declaration of Professor Joshua Mitts, Ph.D., dated May 24, 2024 ("Mitts Decl.").

Plaintiffs' requested discovery is necessary, particularized, and furthers the intent of the PSLRA and the securities laws, and Plaintiffs' request should therefore be granted.

*First*, Plaintiffs' discovery request is particularized because it "is directed at specific

persons," "identifies specific types of evidence that fall within its scope," and is targeted at the particularized purpose of establishing §11 standing. *In re Tyco Int'l, Ltd., Sec. Litig.*, 2000 WL 33654141, at *4 (D.N.H. July 27, 2000); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1222 (W.D. Okla. 2008) (lifting stay and permitting plaintiff to take standing-related discovery). In order to limit the breadth and scope of discovery, if permitted, Plaintiffs will take an iterative approach. In the first stage, Plaintiffs will serve two subpoenas, one each on: (1) the Depository Trust Company ("DTC") for relevant "Participant Daily Activity Statements"; and (2) the transfer agent for the Offering, Computershare Trust Company, N.A. ("Computershare"), for relevant transfer journals and underlying records regarding share registration. As Dr. Mitts explains, these documents may satisfy Plaintiffs' needs, allowing Plaintiffs to trace without further discovery. Movants' App'x, p. 16, ¶¶30-31; p. 17-18, ¶¶34-35; p. 18-22, ¶¶38-45 – Mitts Decl. If these documents are not sufficient on their own, they will allow Plaintiffs to undertake a focused second stage of discovery, which may involve subpoenas to a discrete number of broker-dealers and possibly to Palantir for targeted, particularized discovery concerning the registration status of its shares. *Id.*, p. 16-17, ¶¶32-33; p. 18, ¶¶36-37; p. 22-23, ¶¶46-49. Plaintiffs anticipate that documents from the first stage will allow Plaintiffs to narrow the discovery needed in this second stage, including by honing in on the relevant broker-dealers and potentially obviating the need for discovery from Palantir altogether. *Id.*, p. 17-18, ¶¶34-37. Thus, Plaintiffs' planned discovery will impose no or nominal burden on Palantir.

4860-5833-1071.v1

*Second*, the requested discovery is necessary to prevent undue prejudice to Plaintiffs if the Court finds the SAC's allegations on the threshold issue of standing insufficient.  In that circumstance, and without the benefit of targeted discovery, aggrieved investors would be prevented from pursuing a §11 claim against the Securities Act Defendants for reasons divorced from the claim's underlying merit.  *Thomas*, 540 F. Supp. 2d at 1222 (lifting discovery stay to allow plaintiffs to pursue standing-related discovery because, "[a]bsent particularized discovery on this subject, the federal claims are subject to dismissal").

*Third*, permitting discovery into the narrow issue of Plaintiffs' §11 standing aligns with and furthers the purposes of the PSLRA.  As this discovery will largely – if not solely – be directed at third parties, it would impose no or nominal burden on the defendants and thus will not pressure early settlement.  *See In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).  Moreover, the PSLRA discovery stay "was intended to enforce the PSLRA's requirement of a highly particularized pleading of fraud."  John C. Coffee, Jr. & Joshua Mitts, _Slack v. Pirani and the Future of Section 11 Claims_, at 33 (Dec. 1, 2023) (hereinafter "*The Future of Section 11 Claims*"), https://ssrn.com/abstract=4644888.  The requested discovery here is not a fishing expedition in search of additional facts to bolster Plaintiffs' fraud claims.  Rather, it is targeted solely at tracing Plaintiffs' shares for purposes of their non-fraud §11 claim. Section 11 is a strict liability statute, and allegations of standing are subject to notice pleading under Federal Rule of Civil Procedure 8(a).  Thus, a partial lift of the stay under these circumstances is a modest and reasonable approach to further the congressional

- 5 -

intent of the statute "that companies issuing securities . . . make a 'full and fair disclosure of information' relevant to a public offering."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 178 (2015).

In finding that plaintiffs must "plead and prove" tracing, the Supreme Court left to the district courts the decision of how this can be accomplished.  *See Slack*, 598 U.S. at 770. "The [PSLRA] was designed to erect barriers to frivolous strike suits, but not to make meritorious claims impossible to bring."  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1099-100 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003).  It would be fundamentally unfair for it to be both insufficient for a plaintiff to plead that the likelihood that it purchased a registered share is greater than 99.999999%, and also improper for that plaintiff to obtain discrete discovery to prove this fact.  Such a Catch-22 would endorse a legal loophole that would insulate issuers from §11 liability in the direct listing context.  For all these reasons, and those expressed more fully below, Plaintiffs respectfully request that the Court grant this motion and permit Plaintiffs to engage in the discovery outlined in §III.A. below.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2023, Plaintiffs filed the Consolidated Class Action Complaint for Violations of the Federal Securities Laws, alleging, among other things, violations of §11 of the Securities Act.  ECF 47.  On February 27, 2023, the defendants moved for a stay pending the Supreme Court's decision in *Slack*, which would determine what plaintiffs must plead and prove with respect to tracing in a §11 claim.  ECF 48.  This Court granted the stay on March 21, 2023.  ECF 54.  On June 1, 2023, the Supreme Court issued its opinion

in *Slack*, holding that §11 "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement."  598 U.S. at 770.

Following the *Slack* decision, Plaintiffs filed the Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("FAC") on June 29, 2023, supplementing the §11 allegations with particular facts to plead that they purchased shares traceable to the Registration Statement.  ECF 59.  These allegations included that Palantir's direct listing was an integrated offering, such that each share purchased during registration is traceable to the Registration Statement.  *Id.*, ¶¶463-470.  Plaintiffs further alleged that, even if all sales were not part of an integrated offering, Plaintiffs purchased such a significant number of shares in the Offering that it was a legal certainty (99.99 – followed by 400,000 additional nines – percent) that CalPERS purchased at least one registered share.  *Id.*, ¶¶471-477.

Defendants moved to dismiss the FAC on August 19, 2023, which the Court granted on March 31, 2024.  ECF 67; ECF 82.  On April 24, 2024, the Court held a status conference, at which the Court raised whether a partial lift of the PSLRA stay would be appropriate to allow Plaintiffs to prove their standing to assert §11 claims.  ECF 90.

## III.   ARGUMENT

The PSLRA generally stays discovery in securities fraud cases while a motion to dismiss is pending.  15 U.S.C. §78u-4(b)(3)(B).  However, the PSLRA allows a court to lift the stay if it "finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. §78u-4(b)(3)(B).  In addition, "courts have modified the discovery stay in securities class actions when doing

- 7 -

so would not frustrate Congress's purposes in enacting the PSLRA." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 4796169, at *1 (S.D.N.Y. Nov. 16, 2009).

### A.   Discovery Is Particularized

"[A] discovery request is particularized to the extent that it is directed at specific persons." *Tyco Int'l*, 2000 WL 33654141, at *4.  It is further "particularized to the extent that it identifies specific types of evidence that fall within its scope."  *Id.*   However, "particularized" discovery "is not synonymous with 'identifiable,' [nor] does it necessarily mean 'small.'"  *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004).  Further, "[t]he meaning of the phrase in any particular case must take into account the nature of the underlying litigation."  *Id.*

Plaintiffs' discovery request is sufficiently particularized because it involves subpoenas that seek specific categories of information from identified third parties and is for the express purpose of demonstrating that Plaintiffs purchased at least one registered share.  *See Thomas*, 540 F. Supp. 2d at 1212-22 (lifting PSLRA discovery stay, finding discovery for the purpose of demonstrating which types of products were purchased by which plaintiff to be particularized).  In his declaration, Dr. Mitts explains precisely how Plaintiffs can trace purchases of Palantir shares to the Registration Statement using a limited set of documents readily producible in discovery.  Movants' App'x, p. 8-15, ¶¶17-28 – Mitts Decl.

As Dr. Mitts explains, a company's transfer agent maintains a "transfer journal," generally maintained as electronic book entries, which lists both issuances by the company

to a party and transfers of shares between parties. *Id.*, p. 8, ¶17. He further explains that purchases of securities on the secondary market cannot be settled through journal entries, as transfer agents maintain their own journals, which are not standardized across agents. *Id.*, p. 9, ¶18. Thus, to make trading possible, DTC developed standardized book-entry custodial recordkeeping. *Id.* As relevant here, DTC: (1) holds all of the securities that are being bought and sold by various parties in DTC participant accounts; (2) keeps track of changes in their custodial holdings via DTC's electronic book-entry system; and (3) executes the necessary transfers to settle transactions. *Id.*, p. 10-11, ¶21. These functions make it possible for clearance and settlement to be a digital process. *Id.* Specifically, in this process, shares must be deposited into DTC participant accounts by: (1) the transfer agent (here, Computershare) recording a book entry to DTC (the sale); and (2) DTC recording a direct deposit transaction into the participant account for a DTC participant (the purchase). *Id.*, p. 11, ¶22. These individual deposit, withdrawal, and transfer transactions are recorded on "Participant Daily Activity Statements," a detailed ledger that DTC maintains for each DTC participant on each settlement day. *Id.*, p. 12, ¶23.

Broker-dealers are among the entities that maintain DTC participant accounts. *Id.*, p. 11, ¶22 n.23. In addition to DTC maintaining "Participant Daily Activity Statements," the broker-dealers also maintain detailed, time-stamped transactional records that show when securities are transferred from one account to another. *Id.*, p. 13-14, ¶25. These records allow for the reconstruction of a reliable chain of title to yield a single conclusion regarding who owns each share at each point in time. *Id.*, p. 13-14, ¶¶25-26.

To trace their purchases of Palantir shares to the Registration Statement, Plaintiffs would first issue two subpoenas, one to Palantir's transfer agent, Computershare, for its transfer journals and underlying records regarding share registration, and one to DTC for Participant Daily Activity Statements. *See Anderson v. First Sec. Corp.*, 157 F. Supp. 2d 1230, 1242 (D. Utah 2001) (stay lifted to allow plaintiffs to conduct discovery of three third parties); *Lewis v. Denver Fire Dep't*, 2009 WL 5126545, at *1 (D. Colo. Dec. 18, 2009) (two subpoenas).   These records will likely show the parties involved in each transaction of Palantir shares and, thus, may be sufficient for Plaintiffs to trace their purchases.  Movants' App'x, p. 8-15, ¶¶17-27; p. 17-18, ¶¶34-35 – Mitts Decl.  In the event they are not, Plaintiffs anticipate the records will allow Plaintiffs to identify a limited number of broker-dealers to subpoena for transactional records, from which Plaintiffs can reconstruct a reliable chain of title from the original holder of Palantir shares to the DTC account of Plaintiffs' custodian.[4] *Id.*, p. 16-17, ¶¶32, 36; *see id.*, p. 18-22, ¶¶38-49.  In the event the first phase records do not show sufficient information to ascertain the registration status of certain shares, and in addition to transactional records from relevant broker-dealers, Plaintiffs may also pursue discrete, targeted discovery from Palantir of records concerning the date and amounts of equity awards to employees and other shareholders, Rule 144 opinions, records of sales of unregistered shares by shareholders, and other records concerning the vesting of unregistered shares or eligibility of shareholders to sell unregistered shares.  *Id.*, p. 17-18, ¶¶33, 35, 37.

---

[4]    For context, Plaintiffs understand that 13 brokers comprised 90% of the trading volume during the Registration Statement's 90-day effectiveness period.

4860-5833-1071.v1

The Western District of Oklahoma's decision in *Thomas*, 540 F. Supp. 2d at 1212-22, supports Plaintiffs' request.  There, plaintiffs brought §10(b) claims on behalf of purchasers of MetLife proprietary mutual funds but also raised three additional claims for purchasers of MetLife investment advisory contracts, term life insurance, and proprietary term insurance.  *Id.* at 1215-16.  Rejecting the defendant's argument that the "plaintiffs should know what funds . . . they purchased and when they purchased them," the court lifted the PSLRA discovery stay, given the "matrix of claims," "to help [the plaintiffs] determine exactly which plaintiffs purchased exactly which MetLife proprietary products during the time period relevant to the federal claims."  *Id.* at 1222.  This mirrors Plaintiffs' request here – to obtain targeted discovery to prove which type of securities (registered or unregistered) were purchased by Plaintiffs.  And Plaintiffs have proffered more particularity than the *Thomas* plaintiffs.  In permitting discovery, the court in *Thomas* determined that the plaintiffs' identification of a specific limited purpose for the requested discovery met the "particularized" requirement, though neither the types of documents nor the recipients of subpoenas were identified.  *Id.*  Plaintiffs' purpose is narrower than that in *Thomas*, as it only seeks to prove that Plaintiffs purchased at least one registered share, rather than sorting out between multiple plaintiffs and claims both when they purchased and what they purchased.  In further contrast, here, Plaintiffs have identified the recipients of subpoenas and the specific documents which would be subpoenaed.

Thus, Plaintiffs' requested discovery is more than sufficiently particularized.

4860-5833-1071.v1

**B.    Plaintiffs Would Face Undue Prejudice if Discovery Were Not Allowed**

"Undue prejudice" in the context of a discovery stay is defined as "improper or unfair detriment, but less than irreparable harm." *In re Williams Sec. Litig.*, 2003 WL 22013464, at *2 (N.D. Okla. May 22, 2003).  In assessing whether prejudice is undue, it is "appropriate for the Court to consider the detriment to Lead Plaintiff, any harm or burden to Defendant, and whether lifting the stay would do violence to the purpose of the PSLRA stay." *Id.* Courts have long recognized undue prejudice results "where defendants might be shielded from liability in the absence of the requested discovery." *Vacold LLC v. Cerami*, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001) (collecting cases).

Here, if the Court determines Plaintiffs' SAC does not plausibly allege tracing, Plaintiffs would face undue prejudice if the stay is not lifted because, "[a]bsent particularized discovery on this subject, the federal claims are subject to dismissal for lack of facts alleged in support of standing." *Thomas*, 540 F. Supp. 2d at 1222.  This undue prejudice is particularly acute here, where Plaintiffs have pleaded to a statistical certainty that CalPERS' purchased registered shares.  ¶¶237-243.[5]  This exceeds the showing in *Vacold*, 2001 WL 167704, where the plaintiffs' securities fraud claims were based on defendants' alleged misrepresentation of a lack of outside investment interest in the parties' former joint venture and plaintiffs asserted discovery might establish critical facts that would

---

[5]    In the context of jurisdictional discovery, an analogous threshold issue, the Tenth Circuit has determined that a failure to grant discovery amounts to undue prejudice to the plaintiff and, thus, "an abuse of discretion if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary." *Health Grades, Inc. v. Decatur Mem'l Hosp.*, 190 F. App'x 586, 589 (10th Cir. 2006).

demonstrate the timing of that investment and support their falsity allegations.  *Id.* at *5. The court lifted the PSLRA discovery stay, finding that "the failure to allow discovery on the limited issue of the nature and timing of J&J's interest and investment in [the joint venture] may unfairly insulate defendants from liability for securities fraud as alleged by plaintiffs in the Complaint."  *Id.* at *7.

### C.    A Limited Lift of the Discovery Stay Would Further the Purposes of the PSLRA

"Congress enacted the [PSLRA] discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *WorldCom*, 234 F. Supp. 2d at 305; *see also* S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693 (articulating that the purpose of the discovery stay is to allow the court to determine the legal sufficiency of a complaint alleging securities fraud before the parties engage in costly discovery).

Granting Plaintiffs' targeted request would contravene neither rationale underlying the discovery stay.  First, the discovery which Plaintiffs now seek would likely impose no or minimal cost or burden on Palantir, thus providing the defendants with no impetus to settle prematurely.  *Vacold*, 2001 WL 167704, at *7 ("discovery solely related to the nature and timing of J&J's interest . . . does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

Second, Plaintiffs' narrow request does not initiate a "fishing expedition," as Plaintiffs are not seeking discovery to include additional or more persuasive facts relating to the

- 13 -

substantive allegations of their claims, which Plaintiffs submit are adequately alleged. Rather, Plaintiffs would merely prove with documents what they have already established to a 99.9999+% certainty in the SAC. *See Anderson*, 157 F. Supp. 2d at 1242 ("Because Plaintiffs have articulated their alleged bases of liability, such discovery will not result in a fishing expedition."). Plaintiffs have further demonstrated that the narrow set of documents requested would be sufficient to prove standing. *Cf. Krim*, 402 F.3d at 497 (in the discovery phase, expert admitted tracing impossible).

The rationale for partially lifting the discovery stay is particularly forceful here. "Section 21D(b)(3)'s stay of discovery is closely tied to Section 21D(b)(2)'s requirement that plaintiff plead a 'strong inference' of intent; put simply, the stay was intended to enforce the PSLRA's requirement of a highly particularized pleading of fraud." *The Future of Section 11 Claims*, *supra*, at 33. As opposing counsel himself stated: "[T]he Reform Act makes clear that plaintiffs must satisfy the heightened pleading standard from their own knowledge and investigation, not from discovery." Written Testimony of Boris Feldman Before the Subcommittee on Securities, Committee on Banking, Housing, and Urban Affairs, 1998 WL 94452 (Feb. 23, 1998). Section 11 claims are not subject to a heightened pleading standard. *See In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1015 (D. Colo. 2016) (explaining that §11 claims are subject to "the more lenient pleading standards of Rule 8(a)") (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251-52 (10th Cir. 1997)), *as amended* (Jan. 28, 2016). Further, as §11 imposes strict liability, plaintiffs need not plead scienter – the element to which the PSLRA's heightened pleading standard applies. *See Molycorp*, 157 F. Supp. 3d at 1014-15 ("No scienter is required for liability

- 14 -

under § 11.").  The impetus behind the discovery stay – that plaintiffs meet the heightened pleading standard without embarking on a "fishing expedition" – is thus not undermined by granting Plaintiffs' request for particularized discovery relating to §11 tracing.

In enacting the PSLRA, Congress also noted that the broader purpose of the federal securities laws is "to protect investors and to maintain confidence in the securities markets, so that our national savings, capital formation and investment may grow for the benefit of all Americans."  H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730.  Indeed, "[t]he purpose of Section 11 is to protect investors."  *Escott v. BarChris Const. Corp.*, 283 F. Supp. 643, 697 (S.D.N.Y. 1968).  If issuers could avoid §11 liability simply by conducting offerings as direct listings, a non-merit-based, mechanical exception to §11 would be created.  This contravenes the intent of Congress in enacting §11 "that companies issuing securities . . . make a 'full and fair disclosure of information' relevant to a public offering."  *Omnicare*, 575 U.S. at 178.

## IV.    CONCLUSION

"If . . . Congress had intended an absolute stay on discovery, then Congress would not have authorized a judicial reprieve from such a stay, when a reprieve is needed."  *In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997).  Permitting limited discovery here would provide a narrow exception for a unique case.  Plaintiffs respectfully request that the Court grant a partial lift of the PSLRA discovery stay for the narrow purpose of determining whether Plaintiffs purchased one or more registered shares, as articulated in §III.A.

DATED:  May 24, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
LUKE O. BROOKS
J. MARCO JANOSKI GRAY
ERIKA L. OLIVER
CHRISTOPHER R. KINNON
SARAH A. FALLON


                    s/ Luke O. Brooks
                 LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
lukeb@rgrdlaw.com
mjanoski@rgrdlaw.com
eoliver@rgrdlaw.com
ckinnon@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Plaintiffs

JOHNSON FISTEL, LLP
JEFFREY A. BERENS
2373 Central Park Boulevard, Suite 100
Denver, CO  80238-2300
Telephone:  303/861-1764
303/861-1764 (fax)
jeffb@johnsonfistel.com

Local Counsel

- 16 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 24, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Luke O. Brooks
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  lukeb@rgrdlaw.com

## Mailing Information for a Case 1:22-cv-02384-GPG-SBP Cupat v. Palantir Technologies Inc. et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Naumon Amjed**
  namjed@ktmc.com,rdegnan@ktmc.com,hpaffas@ktmc.com,iyeates@ktmc.com,bschwartz@ktmc.com

- **Adam Marc Apton**
  aapton@zlk.com,ecf@zlk.com

- **Jeffrey Allen Berens**
  jeff@jberenslaw.com,michaelf@johnsonfistel.com,jeffb@johnsonfistel.com,paralegal@johnsonfistel.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Nicholas Angelo Caselli**
  nicholas.caselli@freshfields.com,filing_notice@freshfields.com,6188914420@filings.docketbird.com

- **Sarah A. Fallon**
  sfallon@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Boris Feldman**
  boris.feldman@freshfields.com,filing_notice@freshfields.com,jonathan.sampson@freshfields.com,Jeannette.Smith@freshfields.com,6188914420@filings.docketbird.

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,mtjohnston@pomlaw.com,tsayre@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **J. Marco Janoski Gray**
  mjanoski@rgrdlaw.com,e_file_sd@rgrdlaw.com,TerreeD@rgrdlaw.com

- **Nathan A. Keever**
  keever@dwmk.com,winegard@dwmk.com,dwmk@dwmk.com,stratton@dwmk.com

- **Christopher Ryan Kinnon**
  ckinnon@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **David Y. Livshiz**
  david.livshiz@freshfields.com,filing_notice@freshfields.com,6188914420@filings.docketbird.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Erika L. Oliver**
  eoliver@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Kathryn A. Reilly**
  reilly@wtotrial.com,sanchez@wtotrial.com,CLJones@wtotrial.com

- **Darren Jay Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sam D. Starritt**
  starritt@dwmk.com,winegard@dwmk.com,dwmk@dwmk.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)